Our final case of the day is United States v. Quinones-Figueroa. Mr. Sullivan. Good morning, Your Honor. I'm checking that it's still morning. My name is John L. Sullivan. I'm here on behalf of Elias Quinones-Figueroa. He was pled guilty and was sentenced by Judge Kendall in the Northern District of Illinois. I bring the case on appeal to raise issues about consistency. The guidelines were originally designed and implemented in order to bring some consistency across all kinds of parameters to federal sentencing. Like offenders doing like things with like backgrounds would get generally similar sentences. That's been modified to some degree. Now the district courts are required to correctly calculate the guidelines. They're required to consider the guidelines, but they're not required to, mandatorily required to follow them. They're advisory. And so the objective now is to get consistent advice to the district court judges. In my view, the district court should be calculating the guidelines and accepting the advice as advice and considering it. But it shouldn't be wondering whether the advisory guideline or the advisory guideline sentencing range was greater or lesser than it should be. Whether it's over-considered or under-considered, some factors. Consider the facts as to Mr. Quinones-Figueroa. Carjacking, there was a gun involved, there was a threat, nobody was shot. I'm not downplaying any aspect of this case. All of that's very bad. It's a real problem. But from my point of view, the worst aspect of this case was Mr. Quinones-Figueroa driving on Ogden Avenue at 68 miles an hour, running a red light and hitting a bicyclist at the intersection. So maybe just to cut to the chase, why in imposing the enhancement, why isn't this whole reckless 68-mile-an-hour careening down a busy city street in Chicago, why hasn't he even admitted that this is action in the course of attempting to avoid detection and responsibility for the carjacking offense? He says, he sees the Chicago police car sitting there. He thinks that they're going to add up what the license plate is on this car he's driving and some stolen vehicle report. Off he zooms, and it's all, as the guidelines put it, it's all part and parcel of the original carjacking offense. Hence, this terrible thing that happened to the bicycle rider would justify the six-level special offense characteristic enhancement. Judge, I don't think it's part of the original offense. It's trying to avoid. He's done the original. He's stolen the car. No question. You know that. But why isn't he trying to avoid detection or responsibility for the car theft by roaring away from the police car he sees? It's a question, in my mind, temporarily and geographically. It's only three hours, and it's not that far. I understand, Judge. But where do you draw the line? What if it didn't happen until three days later? Is it still part of the carjacking? I think you'd have to ask the question, is this done in the course of attempting to avoid detection or responsibility? That's a fact question. That's the definition of 1B1.3 of relevant conduct. All flight to avoid arrest is to avoid detection or prosecution. And there's a guideline that covers that, 3C1.3, I believe, or 1.2, the other one that is involved here. So it's a question of why, when there is a specific offense characteristic that might involve injury, do you try and force the flight issue that's covered by 3C1.3? But it's also covered by 2B3.1B3C. It increases the baseline for robbery by six levels if any victim sustained permanent or life-threatening bodily injury. And I think you have to presume there that everybody he would ever run into for days afterwards is a victim. If he's in the car driving it to escape a Chicago police officer. If it happens a week later. I think there's got to be some temporal limit. It doesn't make a realistic connection to say if he's avoiding the police two weeks later that it's still part of the carjacking. I mean, the government argued in the district court the carjacking isn't over yet. Wait a minute, he's got it, it's in his possession, he's gone away, he's been joyriding in it. How is it still part of the carjacking? Now, I agree it's part of flight. Are you deleting? Do you think 1B1.3 shouldn't have included in the course of attempting to avoid detection of responsibility? I think there should be a limit on that. What's your limit? Is it temporal or is it spatial? I'll go back to Donabee, which is, I believe, an incision out of this court, 2003, where the gentleman, the three men took, I think it was more than three men, actually stole three cars and used three cars in an effort to block police from chasing them as they were fleeing the scene of a bank robbery. That flight to avoid detection, I have no question. It's immediate from the scene. They planned it. They used other cars. These other actions were clearly designed to be part of the flight, part of the original offense. And my question is, when you get to this case with Mr. Kiones-Figueroa, how far can you move it before it's no longer part of the offense? And then I get into the second part of it. Doesn't the relevant conduct definition in the course of attempting to avoid detection answer that question for you? But you could say the same thing for all flight, whether it be. Well, and if that's what it means, that's what it means. So then. Is there some statement by the Sentencing Commission that it has a narrower meaning than its text implies? I haven't seen one. No, if you look at the application notes, you don't see that. Correct. Correct. Well, then it's relevant conduct. Then what do you do? It's just a question of what the Sentencing Commission has done in fact. But is it only then, should it then only be considered as a specific offense characteristic? You're making to us an argument that might be made to the Sentencing Commission to change the scope of the guideline. I believe there's some validity to what Your Honor is saying. But I'm not. I think this court should also. I mean, the problem is that the district judge in this case said I'm going to interpret the guidelines as allowing me to shove the flight and hitting the bicyclist into this cubbyhole. And he gets six points. And then she took the second step and said, oh, and by the way, I think there's some other obstruction or endangerment of other people, so I'm going to give them two more points. Well, that's 3C1.2, and you complain that it should have been one or the other. Of course, you'd rather it just be only 3C1.2. But 3C1.2 talks about solely doing something on the basis of the same conduct. We've said that. And she says, actually, even after this bicyclist goes flying off onto the street, he continues to drive in a crazy way. He spins around in the street, does a 180, crashes into a car. So there's more conduct that's certainly distinct from whatever he did to the bicyclist. Judge, I think it's hard to parse that conduct. That conduct occurred over 200 feet with a car that's going 68 miles an hour that hits someone. That's volitional conduct? He said, oh, by the way, I'm going to endanger these other people? He kept going. What? He kept going. I don't think he had any choice. He'd hit somebody. What do you mean you don't think he had any choice? The law required him to stop. No, I understand. He had a choice to obey the law or a choice to defy it. And there are consequences for defying your legal obligations. Judge, there's no testimony whether or not he applied the brakes or not. You misunderstand what I said. You're talking between the time he came into the intersection and the time he hit a parked car, hit the bicyclist and hit the parked car. It was a matter of three or four seconds. I'm not sure there was any thinking going on in this man's head. I don't think he was trying to get away. He tried to crawl out of the vehicle. We know that. But the district judge applied two more points under the flight endangerment while in flight. And she's about as, I call it, clear as mud as to why. Well, he endangered other people. Thank you, counsel. There were other people on the street. Thank you, Your Honor. Ms. Greenwald. Good morning, Your Honors. Whatever he was thinking after he hit the bicyclist, he was thinking when he ran through, when he drove at 68 or 78 miles per hour through the first red light down a city block of mixed residential and commercial businesses on a two-way street with bike lanes on both sides. And that, I don't think we pointed that out directly in our brief, but that would be at the record at page five. He was thinking when he kept going down the second block through the second red light, and he was thinking as he approached a really commercial, busy intersection. By the way, this is all happening at rush hour, and didn't try and slow down there. And had he slowed down and stopped before there, he would have, as this court said in Swope, been noticing that if the defendant had just shot at the police officer, he just would have gotten 3A1.2. Here, he would have just gotten 3C1.2. But he didn't slow down. He didn't stop. And he went into that intersection, and he hurt that bicyclist terribly. And that's why he got the additional six points. So there's a series. As this court pointed out in Swope, as other circuits have pointed out, as we've cited in our brief, flight isn't just flight. There's different acts in it. And here, there were a lot of different acts, as the district court noted, and so it wasn't just based solely on what happened in that intersection. And as to the robbery enhancement, again, as this court noted, there is no temporal limitation. This court pointed that out in Jones. And Donaby is controlling, and it's controlling for us because the argument in Donaby was because that car had been stolen in preparation for the robbery.  It was too attenuated. And there was case law out of the First Circuit saying that. And this court said, absolutely not. Based on the plain language of the relevant conduct guideline, it was in preparation for. It helped evade afterward. And therefore, it applied. So as we cite in our brief, the law is firmly in support of what the district court did here. Unless the court has any questions? I see none. Thank you very much. The case is taken under advisement.